UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEAN HUMMEL,

                              Plaintiff,          DECISION and ORDER

-vs-

                                                         16-CV-6288 CJS

FORSTER & GARBUS LLP,

                              Defendant.

_____

INTRODUCTION

After Dean Hummel ("Hummel" or "Plaintiff") settled a lawsuit brought against him to collect an overdue credit card debt, he filed the subject action under the Fair Debt Collection Practices Act ("FDCPA") against Forster & Garbus LLP ("Forster Garbus"), the law firm that had represented the debt's owner in the underlying action. Now before the Court are Hummel's motion to amend the Complaint (Docket No. [#12]) to add the owner of the debt, Midland Funding, LLC ("Midland") as a defendant, and Forster Garbus' cross-motion [#15] for judgment on the pleadings. Forster Garbus essentially opposes the motion to amend as futile, maintaining that Hummel's causes of action, even if amended, fail to state actionable claims. The Court agrees, and accordingly denies Hummel's application and grants Forster Garbus' application.

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint, the proposed Amended Complaint, and documents from the underlying state-court action which are integral to the Complaint and upon which Hummel relied in drafting the Complaint.

1

On or about February 19, 2015, Forster Garbus commenced an action against Hummel in New York State Supreme Court, Ontario County, on behalf of its client, Midland. The caption of that action was "MIDLAND FUNDING LLC A/P/O CITIBANK -against- DEAN HUMMEL." The complaint in that action alleged that Hummel's credit card account was in default, and that he owed $2,299.81. Forster Garbus' complaint included the statement, "WE ARE DEBT COLLECTORS; ANY INFORMATION OBTAINED WILL BE USED IN ATTEMPTING TO COLLECT THIS DEBT."[1]

On or about March 16, 2016, Hummel had a telephone conversation with an employee of Forster Garbus, wherein it was agreed that Midland would accept payment of $1,700 from Hummel in full satisfaction of the debt. Hummel authorized an immediate electronic funds transfer in that amount over the phone, and the Forster Garbus employee told Hummel that once the payment had cleared, the matter would "be considered settled in full."[2] The employee further informed Hummel that once the debt was settled, Forster Garbus would send him paperwork "letting [him] know that it is officially closed."[3] There is no dispute that Hummel's payment was received and that the debt was therefore settled.

During the aforementioned telephone conversation there was no express reference to the pending state-court lawsuit. However, on April 5, 2016, Forster Garbus sent Hummel a letter, referencing the state-court lawsuit, and stating:

Dear Sir or Madam:

In accordance with the parties' agreement, enclosed is a stipulation of

---

[1] Docket No. [#17-1] at p. 1.

[2] Docket No. [#15-6] at p. 4.

[3] Docket No. [#15-6] at p. 4.

discontinuance in triplicate. Please sign all three copies.

Mail the signed original with a $35.00 check to the court, return the signed "COPY" to our office and keep one for your records.

Section 8020(d) of the CPLR, the statute which governs civil procedure in New York State, now requires the defendant to file the stipulation of discontinuance and to pay [a] $35.00 filing fee for actions commenced in the supreme court and county court.

Very truly yours,

FORSTER & GARBUS LLP[4]

Enclosed was a stipulation/notice of discontinuance, in triplicate, signed by a Forster Garbus attorney, which stated in pertinent part:

> IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE UNDERSIGNED, THE ATTORNEYS OF RECORD FOR ALL THE PARTIES TO THE ABOVE ENTITLED ACTION, THAT WHEREAS NO PARTY HERETO IS AN INFANT OR INCOMPETENT PERSON FOR WHOM A COMMITTEE HAS BEEN APPOINTED OR CONSERVATEE AND NO PERSON NOT A PARTY HAS AN INTEREST IN THE SUBJECT MATTER OF THE ACTION, THE ABOVE ENTITLED ACTION BE, AND THE SAME HEREBY IS DISCONTINUED, WITHOUT COSTS TO EITHER PARTY AS AGAINST THE OTHER. THIS STIPULATION MAY BE FILED WITHOUT FURTHER NOTICE WITH THE CLERK OF THE COURT.[5]

The Court assumes that Hummel filed the stipulation, and that the state-court action was discontinued, since no one has stated otherwise.

There is no indication that Hummel disputes that he actually owed the underlying debt. Nor is there any indication that Forster Garbus or Midland has subsequently had any

---

[4]Docket No. [#15-4] at p. 1.

[5]Docket No. [#15-4] at p. 2.

further contact with Hummel concerning the settled debt, or has otherwise attempted to renege on its agreement to settle the debt for less than what Hummel owed.

Nevertheless, on May 5, 2016, Hummel commenced this action alleging violations of the FDCPA. More specifically, the original Complaint [#1] alleges that Forster Garbus violated 15 U.S.C. § 1692e(11), because the transmittal letter accompanying the stipulation of discontinuance did not disclose that the communication was from a debt collector. The Complaint further contends that Forster Garbus violated 15 U.S.C. § 1962e because the stipulation of discontinuance was misleading, insofar as it failed to indicate that the action was being discontinued "with prejudice."

On June 21, 2016, Forster Garbus answered the Complaint. On August 31, 2016, Hummel filed the subject motion [#12] to amend the Complaint. The primary purpose of the proposed amendment appears to be to add Midland as a defendant, on the theory that Midland is vicariously liable for the acts of its agent, Forster Garbus.[6]

On September 23, 2016, Forster Garbus filed the subject cross-motion [#15] for judgment on the pleadings. The motion contends that Hummel's request to amend should be denied as futile, since the claims are not actionable against Forster Garbus as a matter of law, for the following reasons: 1) the letter transmitting the stipulation of discontinuance was not a communication "in connection with the collection of any debt," within the meaning of 15 U.S.C. § 1692g(a), because it was merely informational and did not demand payment; and 2) the stipulation of discontinuance was not false or misleading within the meaning of 15 U.S.C. § 1692e merely because it failed to indicate that the discontinuance was with prejudice, since the matter was in fact settled, and neither Forster Garbus nor Midland would

---

[6] *See, e.g.*, Proposed Amended Complaint [#12-1] at p. 8, ¶ ¶ 46-47.

4

have any reason to sue Hummel again for the same debt.[7]  The motion further indicates that because the pleadings fail to state actionable claims against Forster Garbus, they also necessarily fail to establish any claim of vicarious liability against Midland.[8]

On October 6, 2016, Hummel filed his opposition [#17] to Forster Garbus' cross-motion.  Hummel contends that his claim under 15 U.S.C. § 1692e(11) is actionable, since a reasonable consumer would interpret the letter as having been in connection with the collection of a debt.  On this point, Hummel cites, *inter alia*, *Hart v. FCI Lender Servs.*, 797 F.3d 219, 225 (2d Cir. 2015) ("*Hart*").  Hummel contends that his claim under 15 U.S.C. § 1692e is also actionable, since the stipulation of discontinuance would have misled "the least sophisticated consumer [into believing] that he had achieved a final resolution of his debt when, in fact, the creditor retained the power to sue him again."  On this point, Hummel cites, *inter alia*, *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("*Clomon*").

On October 19, 2016, Forster Garbus filed a reply [#20], reiterating the points in its moving brief.  As for Hummel's claim under § 1692e relating to the stipulation of discontinuance, Forster Garbus admits that the Court must apply the "least-sophisticated consumer" standard, but nevertheless contends that Hummel cannot state an actionable

---

[7]Forster Garbus also contends that the pleadings are deficient because they do not expressly indicate that Hummel's account was in default when Forster Garbus obtained it, and therefore do not plausibly plead that Forster Garbus is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Hummel maintains that the proposed amended pleading includes such language, but states that to the extent the Court disagrees, any deficiency can be easily be fixed by amending the pleading, since there is no genuine dispute that the debt was actually in default at the relevant time.  The Court need not address this argument since it finds that Hummel's claims would fail as a matter of law even if he adequately pleaded that his account was in default at the relevant time.

[8]Forster Garbus alternatively contends that even assuming *arguendo* that it committed actionable violations of the FDCPA in connection with its transmittal of the stipulation of discontinuance, its agency relationship with Midland had already ended by that time, because "upon *receipt of the settlement amount* from Plaintiff, the relationship between [itself] and Midland was terminated with respect to all aspects of Plaintiff's account." Def. Memo of Law [#15-1] at p. 18 (emphasis added).  However, this argument seems meritless and therefore unworthy of much discussion, since Forster Garbus was obviously still acting as Midland's agent when it sent the stipulation of discontinuance to Plaintiff.

claim. In that regard, Forster Garbus maintains that Hummel's characterization of the stipulation as misleading is not reasonable, but rather, is a mere "bizarre or idiosyncratic interpretation." Forster Garbus similarly maintains that it would be "bizarre or idiosyncratic" to interpret the cover letter transmitting the stipulation of discontinuance as a communication in connection with the collection of a debt, since the parties had already settled the debt at the time the letter was sent.[9]

DISCUSSION

Courts must freely give leave to amend pleadings "when justice so requires." FRCP 15(a)(2). Nevertheless, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir.2009) (citation and internal quotation marks omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished, citation omitted).

The 12(b)(6) standard is applicable to Forster Garbus' cross-motion for judgment on the pleadings pursuant to FRCP 12(c). *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)."), *cert. den*. 531 U.S. 1052, 121 S.Ct. 657 (2000). That standard is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain

---

[9] Forster Garbus also argues that Hummel lacks standing to maintain his claim under § 1692e, since he suffered no injury from the alleged failure to include the words "with prejudice" in the stipulation of discontinuance. On November 18, 2016, Hummel filed a sur-reply [#22], with the Court's consent, asserting that Forster Garbus' "standing" argument lacks merit, because Forster Garbus "invaded [his] legally protected interest . . . to receive communications from debt collectors that comply with 15 U.S.C. § 1692e." However, the Court declines to address the "standing" argument, since it finds that Hummel's claims are not actionable in any event.

statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007 ) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted). When applying this standard,

> [w]e construe all factual allegations in the complaint as true and "draw[ ] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d [at 98]. In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000); *Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995).

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014).

The first issue to be resolved is whether Hummel has plausibly pleaded that Forster Garbus' transmittal letter and enclosed stipulation were communications "in connection with the collection of any debt." If the Court answered that question in the affirmative, then Hummel's first claim could proceed, since it is undisputed that the letter did not indicate that

it was from a debt collector, as required by § 1692e(11).  Then, the Court would have to decide, as to Hummel's second claim, whether he had also plausibly pleaded that the stipulation of discontinuance was "false or misleading" within the meaning of § 1692e.  However, the Court answers that first question in the negative, and consequently both of Hummel's FDCPA claims fail.  That is, neither the transmittal letter nor the stipulation of discontinuance was sent to Hummel in connection with the collection of any debt.

15 U.S.C. § 1692e generally prohibits "false or misleading representations" by debt collectors "in connection with the collection of any debt."  As part of that general prohibition, Subsection (11) of that statute requires that "the initial written communication" between a debt collector and a debtor must contain a disclosure "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and that "subsequent communications" from the debt collector must disclose "that the communication is from a debt collector."  Interpreting identical language under a different section of the FDCPA, the Second Circuit has stated that,

> whether a communication is "in connection with the collection of [a] debt" is a question of fact to be determined by reference to an objective standard. <u>Thus, in determining at the motion to dismiss stage whether [a letter] triggers the Act's notice provisions, we must view the communication objectively, asking whether [the plaintiff] has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent "in connection with the collection of [a] debt," rather than inquiring into the sender's subjective purpose.</u>  Such an inquiry is consistent with the FDCPA's goal of protecting consumers: if a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled to the protections Congress has mandated for such communications. An objective standard that determines the apparent purpose of a communication with an eye towards a consumer's understanding also aligns with our teaching that the FDCPA is "remedial in nature, [and] its terms must be construed in liberal fashion if the underlying Congressional purpose

8

is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir.2013) (internal quotation marks omitted).

*Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (emphasis added; some citations omitted); *see also, Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) ("In addressing this question at the motion to dismiss stage, our role is to determine merely whether, when viewed objectively, the plaintiff has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent in connection with the collection of a debt, rather than inquiring into the sender's subjective purpose.") (citation and internal quotation marks omitted).

When performing this objective analysis, the Court must view the subject communications from

> the perspective of the "least sophisticated consumer." The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd. But in applying this standard, we bear in mind the [FDCPA's] "dual purpose": in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications. Even in crafting a norm that protects the naive and the credulous, we have carefully preserved the concept of reasonableness. Accordingly, the FDCPA does not aid plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices.

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citations omitted).

Despite the objective nature of this inquiry, some courts have held that the "least sophisticated consumer" should be assumed to be familiar with his own account history and/or his course of dealing with the creditor/debt collector. *See, Wahl v. Midland Credit Mgt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (Observing that when determining whether an

unsophisticated consumer would be misled by a debt collector's communication regarding a credit card account, the consumer should be deemed to have "a reasonable knowledge of her account's history."). The Second Circuit's position on this issue is not entirely clear. In *Easterling v. Collecto, Inc.*, 692 F.3d 229 (2d Cir. 2012) ("*Easterling*"), the Second Circuit found that a district court had improperly considered the consumer's "background" in determining whether a communication from a debt collector could be reasonably viewed as false, deceptive or misleading. On this point, the Circuit Court stated that, "[b]y its very nature, however, the least sophisticated consumer test pays no attention to the circumstances of the particular debtor in question." *Id.*, 692 F.3d at 234. However, in *DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F.App'x 7, 9-10 (2d Cir. Jul. 16, 2015) ("*DiMatteo*"), the Circuit Panel questioned, without deciding,[10] whether such language in *Easterling* meant that a court must ignore "what even the least sophisticated consumer would know about the context of the ongoing dispute leading to the assertion of the debt," stating, "We are not certain that the language in *Easterling* reaches so far."[11][12]

Here, the Court finds as a matter of law that no least-sophisticated consumer, receiving either Forster Garbus' transmittal letter or the enclosed stipulation of discontinuance, could reasonably interpret either document as having been sent in connection with the collection of a debt.

---

[10] *See, DiMatteo*, 619 F.App'x at *10 ("We need not decide here, however, what facts regarding the debt should be imputed to the least sophisticated consumer[.]").

[11] Indeed, if one of the "dual purposes" of the FDCPA is to "protect[ ] debt collectors from unreasonable constructions of their communications," *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008), it would seem to make little sense, when construing such communications, to pretend that a reasonable consumer would be unaware of the "context of [his own] ongoing dispute" with the debt collector.

[12] The Hon. Gerard E. Lynch, Circuit Judge, was a member of both the *Easterling* and *DiMatteo* panels.

To begin with, the Court will assume that the consumer, despite being unsophisticated, is at least aware of "the ongoing dispute leading to the assertion of the debt," as suggested in *DiMatteo*. In such case, the least-sophisticated consumer could not reasonably interpret the transmittal letter or stipulation as having been sent in connection with the collection of a debt, because he would be aware that he had already paid and settled the debt, and that the documents were merely sent to discontinue the underlying court proceeding. Indeed, such a consumer would have been expecting such documents, because during the phone conversation between Hummel and Forster Garbus on March 16, 2016, the Forster Garbus representative told Hummel that he would be receiving additional paperwork confirming the settlement.[13]

Furthermore, even if the Court assumes that the least-sophisticated consumer has *no* awareness of "the ongoing dispute leading to the assertion of the debt," it must nevertheless conclude that no reasonable consumer would interpret these documents as having been sent in connection with the collection of a debt. That is, not even the least-sophisticated consumer with no knowledge of the underlying circumstances could reasonably interpret the letter or stipulation as having been sent in connection with the collection of a debt, since the documents contain no indicia of such a purpose.

For example, in *Hart*, cited earlier, the Second Circuit found that communications sent to a mortgage debtor by the loan servicer could reasonably be viewed as having been sent in connection with the collection of a debt, because they were "an attempt to collect a debt," as shown by the following factors: 1) the communication referenced the debtor's "particular debt"; 2) the communication directed the debtor to make payment on the debt at a particular

---

[13]Docket No. [#15-6] at p. 4.

address; 3) the communication warned the debtor that the debt would be presumed valid unless he disputed it within thirty days; 4) the communication expressly referred to the FDCPA; and 5) the communication contained a statement that it was "an attempt to collect upon a debt." *Hart*, 797 F.3d at 226; *see also, Carlin v. Davidson Fink LLP*, 852 F.3d at 215 (Discussing *Hart*). In *Hart*, the Court indicated that the absence of an express demand for payment was not dispositive, but was a factor to be considered. *Hart*, 797 F.3d at 226-227.

In the instant case, neither the letter nor the stipulation contain any of the indicia that were present in *Hart* or *Carlin*. The documents do not reference a debt in any way.[14] At most, a least-sophisticated consumer who received the documents, and who was not familiar with the context, could reasonably deduce that a legal dispute of some kind had existed between "Midland Fund A/P/O Citibank" and Hummel, which was being discontinued. Such a consumer could not reasonably interpret the documents as being anything other than what they appear to be – a communication transmitting the stipulation of discontinuance of a state-court action. Such a consumer, however, would have no idea what the underlying legal dispute was about, since the documents give no information on that point. Accordingly, the consumer could not reasonably conclude that the documents pertained to a debt, or, more importantly, to the collection of a debt.

Admittedly, the transmittal letter points out that New York CPLR § 2020(d) requires the defendant in an action to file the stipulation of settlement, and to pay a filing fee of $35 to the court. However, such filing fee is not a debt, and certainly not a debt owed to Forster Garbus or Midland. Nor do the documents suggest that Hummel's failure to file the Notice

---

[14] *See, e.g., Burns v. Seterus*, Inc., No. 16-CV-06638, 2017 WL 104735, at *3 (W.D.N.Y. Jan. 11, 2017) ("The context of the notices, which fail to include any statement of by when, how, and to whom the alleged debt must be paid, demonstrate that they were not sent in connection with the collection of any debt.").

of Discontinuance will have any effect on a debt.

In sum, the Court finds that even the least-sophisticated consumer could not reasonably interpret the subject documents as having been sent in connection with the collection of debt. The Court notes, in this regard, that Hummel has not cited any case in which a letter transmitting a stipulation of discontinuance has been treated as having been sent "in connection with the collection of a debt." Nor has the Court's own research uncovered any case remotely supporting Hummel's argument. Hummel nevertheless insists that the Court must interpret the phrase "in connection with the collection of a debt" so broadly as to apply to any communication "related to," "respecting" or "associated with" a debt.[15] However, while the Court must construe the FDCPA liberally to effectuate the statute's remedial purpose, the Court does not believe that it is required to stretch the meaning of the phrase "in connection with the collection of any debt" so far as to encompass every communication having some connection to a debt (or, in this case, a former debt), no matter how tenuous. Here, the subject documents were sent in connection with a former debt, but were not sent in connection with the *collection* of an existing debt. Accordingly, Hummel's motion to amend is denied as futile, and Forster Garbus' motion for judgment on the pleadings is granted.

Furthermore, even assuming *arguendo* that the stipulation qualified as a communication in connection with the collection of a debt, the Court would find, for the reasons argued in Forster Garbus' submissions, that Hummel's second cause of action still

---

[15]Pl. Memo of Law [#17] at p. 8 (*citing Tocco v. Real Time Resolutions, Inc.*, 48 F.Supp.3d 535, 540 (S.D.N.Y. 2014)). The *Tocco* decision stated, in pertinent part, that "[i]n connection with" is synonymous with the phrases "related to," "associated with," and "with respect to." *Id.* at 540. On that point, *Tocco* cited *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 157 (2d Cir.2005), which is not an FDCPA case. In *Hart*, the Second Circuit noted, but neither adopted nor rejected, the aforementioned statement in the *Tocco* decision, indicating that it was not necessary to "delineate the outer bounds" of the expression. *Hart*, 797 F.3d at 226.

fails to state a claim because even the least-sophisticated consumer could not view the stipulation as false, deceptive or misleading.

More particularly, Hummel contends that the stipulation should have expressly stated that dismissal would be "with prejudice" (even though the parties never discussed that point), because by operation of New York law,[16] the omission of such language results in dismissal without prejudice, which could permit Forster Garbus and/or Midland to sue him again for the same debt:

> In essence: by (1) entering into a settlement agreement with the consumer in which the debt was purportedly settled in full, and then (2) sending a stipulation of discontinuance without prejudice, DEFENDANT misleads the least sophisticated consumer into believing that they had achieved a final resolution of the lawsuit and debt, when, in fact, DEFENDANT retains the power to sue the consumer again.

Proposed Amended Complaint [#12-1] at ¶ 61. Hummel has not alleged, though, (plausibly or otherwise) that Forster Garbus and/or Midland actually had any intention of initiating further litigation against him. Furthermore, Hummel admits that Forster Garbus and/or Midland would have no meritorious legal basis to bring such a repetitive claim, and that their doing so would itself violate the rules of ethics and the FDCPA. Nevertheless, Hummel contends that the omission of the words "with prejudice" from the stipulation violated § 1692e precisely because a least-sophisticated consumer could theoretically interpret it as enabling Forster Garbus and/or Midland to engage in such frivolous, unethical and illegal litigation against him.

Significantly, Hummel has not cited any FDCPA case in support of this claim, nor can

---

[16]New York CPLR § 3217(c).

the Court find any. That is, the Court cannot find any such case where a stipulation of discontinuance was deemed false, deceptive or misleading because it failed to include the words "with prejudice." In any event, the Court agrees with Forster Garbus that the least-sophisticated consumer could not reasonably view the stipulation in the manner urged by Hummel.

CONCLUSION

Hummel's motion to amend [#12] is denied as futile, and Forster Garbus' cross-motion for judgment on the pleadings [#15] is granted. The action is dismissed with prejudice.

SO ORDERED.

Dated: Rochester, New York
October 19, 2017

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge